Good morning all. Our first case this morning is the City of Chicago v. Fulton. Ms. McLaughlin The City does not violate the Bankruptcy Code's automatic stay provision by holding a lawfully impounded vehicle after the owner files a bankruptcy petition. In the cases before the Court, the four debtors accumulated 169 violations and owe the City over $42,000. Their vehicles were impounded before they filed Chapter 13 bankruptcies. When the City did not immediately return the vehicles, the Bankruptcy Courts each sanctioned the City for violating Section 362A.3 of the Code, which prevents any act to exercise control over property of the estate. Those sanctions were imposed in error for three separate reasons. First, the City did not commit an act in violation of the automatic stay. The stay, as the name implies, maintains the status quo. By holding debtors' vehicles, the City took no action to alter the status quo. It also did nothing to exercise control over property interests that belonged to the debtors' estates. At the time they filed bankruptcy, the debtors had no possessory interest in their vehicles, and no such interest passed to their estates on the petition date. Now, this Court's 2009 decision in Thompson held that a creditor violates the stay by retaining a vehicle that was lawfully acquired pre-petition. Respectfully, Thompson was wrongfully decided and should be reversed. But alternatively, even if the Court reaffirms Thompson, two different exceptions to the automatic stay allow the City to hold impounded vehicles without violating the stay. Section 362B3, excepts from the stay, acts to maintain the perfection of an interest in property. The City has a possessory lien on impounded vehicles, and because a possessory lien is maintained by possession, by retaining the vehicle, the City maintains the perfection of its possessory lien on the vehicle. Section 362B4... Do you lose the possessory lien if you give up possession? We believe we do. And what authority supports that? Because your adversary argues that it would be involuntary, that the loss of possession would be by operation of the Bankruptcy Code. Right. First of all, that is an incorrect interpretation of Section 362B3. The statute accepts an act to maintain perfection of a lien. It does not say that only those acts that are necessary to avoid loss of perfection are accepted, and it does not say that the exception applies only when there is no possible defense to the loss of the creditor's interest. So under the plain terms of the statute, the City acts to maintain perfection of a lien by maintaining possession, and the exception would apply. Now, also the City has no reason to feel comfortable that its lien would remain perfected and would retain priority under the circumstances if it gives up possession. But the question of whether the possessory lien remains valid is a question of Illinois law, right? Correct. So what authority in Illinois law do you have for the notion that when you lose possession by operate, involuntarily lose possession, that as a matter of law, you have lost the possessory lien? You've certainly lost possession of the car. I understand that. In our research, we've found no cases that squarely address the situation either way. Debtors cite one Illinois law case, which is Henry Miller, and that case I think actually supports the City's position. In that case, the property was ordered to be released. In this case, it was documents held by an attorney in order to secure payment for attorney's fees, I believe. The court ordered that that property of the debtor was to be released, but that was according to a court order, and the party's interest, the attorney's interest in payment, was determined, and it was ordered protected by the court before the property was ordered to be released. That is the only Illinois case that debtors have cited for this idea that the possessory lien is not lost. But in that case, the possessory lien was replaced by something that would constitute, if we're going to use bankruptcy terms, adequate protection. So if anything, the case law suggests that the possessory interest should be protected, but that the way to do that is through a court order and a determination of adequate protection for the creditor. Which you could have sought. We did not have an opportunity to seek that. We were ordered to return the vehicle before having the opportunity to have adequate protection determined by the court. Just going back to the outline of our argument, Section 362b-4 also applies here. That section accepts acts to enforce police or regulatory powers. Impoundment is a means by which the city enforces its vehicle and traffic regulations. Thus, three separate bases exist to reverse the decisions below and vacate the orders sanctioning the city for violating the automatic stay. If we take a closer look at Section 362a-3, the relevant prohibition here is of any act to exercise control over property of the estate. That plain language does not require the city to alter the status quo on the petition date by releasing debtors' vehicles. And our conclusion follows both from the language of the statute, as well as the fact that reading the automatic stay to compel turnover effectively reads the turnover provisions in Section 542a out of the code by rendering them essentially meaningless. As to the language of the statute, the prohibition is of any act. But retaining a vehicle that was seized before a petition was filed is not an act. As the Tenth Circuit in Cowan and the D.C. Circuit have recognized, only an affirmative post-petition act to alter the status quo violates the stay. The Thompson decision simply ignored the word act in the statute, skipping over it and focusing on the language exercise control. But the stay does not prevent a creditor from exercising control over property that's already in its possession. It prevents the creditor from taking affirmative action to alter the status quo to exercise control over a property after the petition is filed. The stay also prevents acts to exercise control over property of the estate. Under Section 541a of the code, property of the estate has a specific definition. All legal or equitable interests of the debtor in property as of the commencement of the case. That's only the specific legal and equitable interest that the debtor has when the petition is filed passed to the estate. And when property is held by a secured creditor on the petition date, possession is not an interest that passes automatically to the estate on the filing date. That possessory interest remains with the creditor. Now, possession certainly can become part of the estate later, but that happens through a turnover proceeding, which is exactly as the Supreme Court held in Whiting Pools. Section 542a of the code also demonstrates that the stay does not operate to compel turnover of property in the hands of secured creditors. The code does, as I said, allow debtors to regain possession of property in creditors' hands when it's needed to effectuate their Chapter 13 plan. While the stay preserves the status quo at the initiation of the case, Section 542a enables property in the hands of creditors to be drawn into the estate through a turnover action. Ms. McLaughlin, looking at 362F and E, the city could have sought protection under those provisions, couldn't it? It could have. And, in fact, it is entitled to adequate protection under 362E. Yeah, but the city didn't receive that, did they? Our position is that we did not have that opportunity, that the way that the turnover procedures are designed, the issue of adequate protection must be determined before we're required to turn over the property, because turnover is contingent on providing adequate protection for the creditor. Now, I think your question is, why couldn't we file a motion to lift the stay? And there are several problems with that approach. First of all, it's just not the procedure that Congress designed. But also, practically speaking, although a creditor could seek to modify the stay on an emergency basis, to do so, the city would have to basically make one of two decisions. We could, on one hand, hold onto the property until a hearing on our motion to modify the stay was held. That would require us to knowingly violate the law until that hearing was held. And then, if we lost, we'd face a contempt proceeding. So, at bottom, the city should simply not be required to knowingly violate the law in order to protect our interest in getting adequate protection of our lien. Now, our other option would be to surrender the property immediately and then seek to lift the stay. The problem with that option is that there results a period during which our possessory lien is subject to dissipation. So, there's several reasons why our lien could be impaired. First of all... You mean the value of the vehicle is declining during that period? Is that the concern? That's one of several concerns. So, I think there are probably three or four important points to make here. First of all, there's a risk to any automobile on the road. So, at a minimum, the city would be adequately protected only if there were insurance that named the city as a loss paid. That's necessary protection for any creditor with a lien on property. What does the city do with those vehicles? We hold them. And then crush them? No. And sell them? Well, it depends on the situation. The city could take further steps to enforce its liens. To do so, it would have to take steps in circuit court to register its judgment. And then it would have means available to any creditor. So, there are a number of different routes that could be taken. So, it's not typical that the city takes a vehicle and only sells them as scrap? That could happen. Well, it does happen. Certainly. Is that primarily what happens? I don't have statistics on what happens. But if I might go back to the problem with requiring the city to immediately turn over a vehicle before a determination of adequate protection. As I mentioned, we would not be listed on the insurance as a loss paid. Second, once the property is gone, as we have a possessory lien on that property, the lien and the perfection of that lien are also gone. And we might have a defect to that. The restatement of security is against you on that point, too. But, Your Honor, there is simply no way that. . . The reason you want to keep the car is because by maintaining possession of the car, you're imposing pressure upon the debtor to pay the parking tickets. I mean, that's the whole point. I asked you, why do you care about possession? You care about possession not because the city wants the car. You want to get paid. Isn't that the whole point of the reasoning in Thompson? That's what the stay is about, preventing. Right. Let me. . . I want to speak to two aspects of that. Certainly, Thompson is all about achieving a particular policy result, which is to get the vehicle back in the hands of the debtor. Now, that ignores the other goal of Chapter 13 bankruptcy, which is to ensure the protection of secured creditors. There is no dispute between the parties here that the city is a secured creditor. And it is secured by virtue of the possessory lien that it has on the vehicle. That is a property interest that the city has. Now, to require the city to abandon that property interest by returning the vehicle immediately, without any opportunity to be heard on the issue of adequate protection, frankly raises due process concerns. Well, why do you say you have no opportunity to be heard? Have you tried that path? In other words, somehow some way you learn of the Chapter 13 petition, correct? Correct. And I presume at that point the owner of a car shows up at the pound and asks for the car back. Correct. But before you give the keys to the owner, have you ever gone into a bankruptcy court and said, look, we're about to lose possession. There's a Seventh Circuit case called Thompson. We've got to give this guy the keys. But we want adequate protection. We're a secured creditor. In each of these cases, the city went to the bankruptcy court and informed the court that we are a secured creditor. And in each of these cases, the courts determined that we were not. Did you do the second part of that? Did you say, and we believe that we're entitled to adequate protection for our security interests. And we're going to put a motion on file here because we want to get protected. Have you ever done that? That is not the procedure that we think that the code requires. But let me explain why that's problematic. I already discussed the insurance issue, and I've already mentioned the fact that it is our fear that once we give up the vehicle, our possessory lien is essentially gone. And there is support for that. In fact, the only federal court that has looked at that issue, the Eighth Circuit Bankruptcy Panel, held that when a secured creditor surrendered its possessory lien, that it no longer had a possessory lien on that collateral. But let me, there's also something else. Involuntarily surrendered or voluntarily surrendered? The question of involuntary or voluntary is not one that there's case law determining. So we would risk an assessment that our surrender of the lien was voluntary. There's no court order that requires us to surrender the lien. We simply don't know, and that is not a comfortable position for the city to be in when we risk simply losing our lien interest by giving up the car. But I do want to point out something else that is happening in many cases that I think demonstrates why it's dangerous for the city to have to simply release the vehicles. Once a car is turned over, the debtor can simply dismiss the case. And that happens, unfortunately happens in many cases. And at that point, not only is our possessory lien on the car gone, but we do not have an opportunity to seek adequate protection of our lien interest. The case is over at that point. So we could file a motion, but with the case dismissed, we will not be heard on that issue. Yeah, but I thought the thrust of Judge Scudder's question, which I hope was mine, is why you wouldn't move before that point when the Chapter 13 petition is filed. We can move as fast as we can, but if we're required to give back the car immediately, we may not be heard on that point. Well, are you suggesting the bankruptcy court wouldn't hear the city at the outset? I'm suggesting that that will take some time and that there is no guarantee that we'll be heard on that point before the case is dismissed. I just want to remind you about your rebuttal time. Yes. I mean, it's your time. You can use it however. I will. Let me just briefly note that, before I save the remaining time for rebuttal, that the court in Shannon also held that the city violated Sections 362a.4 and 6. We believe that that decision was also erroneous, and we'd ask that that be reversed as well. Before you leave the podium, would you acknowledge that Thompson still remains the majority view in the country? It is the majority rule in the country, and even if this Court did reverse its position on Thompson, it would remain so. However, the most recent decision on the issue was in 217, and it did go the other way. All right. Thank you, Ms. McLaughlin. Mr. Weedle? May it please the Court? In order for the city to prevail in this appeal, the city would have to establish two things. Number one, that there was no violation of Section 362a.3 or 4, and two, that if there was, some exception in Section 362b excused the violation. The city has done neither of those two things. As to the first, was there a violation of Section 362a.3, which prohibits any act to exercise control over property of the estate? The answer to that question, as this Court held in the Thompson decision, is plainly yes. Holding on to property against the interest of the debtor in obtaining that property is an exercise of control, and moreover, it's an act. The city tows these cars away. The debtor still has the key to the car. If the debtor appeared at the pound with that key and attempted to get to the car and drive the car away, the city would stop them. The pound would be locked. The pound would be guarded. There would be no opportunity for the debtor to exercise the debtor's control over the property. The city is absolutely taking action to prevent the debtor from obtaining the car. That's exactly what this Court held in the Thompson case. It looked at the meaning of exercise control and held that the exercise of control included directing the way the property is used so that when the city prevents the debtor from using the property, the city is acting to control the property. That's the simplest, most straightforward meaning of that term. Although Ms. McLaughlin didn't go into it, the city goes on to argue that because this is a stay and the status quo was that the city had the car, there's no violation of a stay in the city keeping the car. The problem with that argument is Section 542A of the Bankruptcy Code, which provides very clearly that as of the filing of a bankruptcy case, any creditor holding property of the estate must turn it over to the person entitled to operate the estate. In Chapter 13, that's the debtor. There's no question that the debtor is the beneficiary of the turnover requirement of Section 542A. The important thing about Section 542A is that it says the creditor holding the collateral shall deliver it to the debtor. What's the path for the city to get adequate assurance in light of the questions that Judge Flan and I were asking? Suppose we say, you're right, you're right. Now tell them what they can do in tomorrow's case to get adequate assurance. They have either of two choices. Or adequate protection, I'm sorry. Either of two choices. First, under Section 363E, they may request, ex parte even, adequate protection. If they make an emergency request for adequate protection at the very outset of the case, the bankruptcy court will hear that immediately. The bankruptcy court is willing to hear emergency motions on one day notice. But remember, this can be done ex parte if there's a showing of the necessity for doing that. So the bankruptcy court would make an immediate determination as to adequate protection under Section 363E. Beyond that, there's Section 362D, relief from the automatic stay, which also allows on ex parte basis relief from the automatic stay to protect the right of the creditor to adequate protection. So there is no question that they could get an immediate ruling on this question. What's really going on here is a judgment call as to what is the more appropriate procedure. Is it more appropriate, as the city argues in its brief, that the debtor be required to file an adversary proceeding against every creditor who's holding property of the debtor at the time the case is filed? Or is it more appropriate to require the creditor to come into court and ask for adequate protection? The code could not be clearer on that subject. It is the creditor's obligation to take action. Now, one of the decisions... Can you address one of the points that the city makes that seems a bit fair to me, but there also seems to be a response to it, is the concern about folks that have their cars impounded, and they react to that just by filing a Chapter 13 petition. The suggestion in that is that it's a fraud, it's a sham, that there's no good faith basis to file the petition. And then once they get their car back, they dismiss the petition. Isn't there a remedy for that? There certainly are a number of remedies, but the most important is that the filing of a bankruptcy case, particularly a Chapter 13 case in bad faith, results in immediate dismissal. And there are even potentials for sanctions against debtors who engage in conduct like that. If there is a bankruptcy case dismissed, and then an immediate filing of a new case, the automatic stay terminates after 30 days, unless the debtor can show good cause for the second filing. The bankruptcy code itself is replete with remedies for bad conduct by debtors. In fact, that was one of the major impacts of the 2005 amendments to the bankruptcy code. So if there's this really untoward game going on, you know, my car is towed to the pound, and the way to get it out is to file a Chapter 13 petition, I'll get the car and then dismiss the petition tomorrow, the city ought to march into bankruptcy court with a bad faith motion. Exactly. And moreover, when the city asked for relief from the automatic stay, the city could provide that the order that denies their motion also put into effect a continuing lien on the property, if there were any doubt about that. That really gets me, though, to the, well, let me finish on 542A. 542A could not be clearer that its obligations are mandatory. It uses shall. It does not, contrary to the city's argument, require a court order before a creditor has the duty to return to the debtor in Chapter 13 whatever property the creditor has seized pre-petition. If there were such a requirement, it would be like the requirement for appointing a creditor's committee, which the code says only should be done by the United States trustee on order of the court. There is no requirement in Section 542A of any order of the court before the creditor has the obligation to return the property. And the whiting pools... Do you think we have to decide this? I think we resolved this in Thompson. I agree. I mean, there's language that's as clear as a bell in Thompson about 542A. Yes. And moreover, Thompson clearly cites whiting pools as establishing... Yes, exactly. And it's a very thorough analysis. So I'll pass that then. And let's go to exceptions from the automatic state. And the main exception that's argued by the city, in fact, it's the reason why the city enacted the ordinance giving it a, quote, possessory lien, close quote. This is not like the ordinary possessory lien under the common law. The ordinary common law possessory lien is when someone does some benefit to property of the debtor. Fixes a car, for example, and then wants to hold on to that car until they're paid for their repair. That's a possessory lien under the common law. That, by the way, is the only kind of possessory lien that's accepted from the priorities that are established in the Uniform Commercial Code. So when the city takes a car pursuant to its ordinance, it's exercising a special non-common law possessory lien. And the reason why it enacted that statute was precisely to attempt to avoid the impact of Section 362A3 of the automatic stay. They want to be able to argue that the B3 exception to the automatic stay prevents them from having to deliver the property because then they would lose their possessory lien. However, that is not the common law on possessory liens. Only voluntary termination of possession terminates the possessory lien. And is there voluntary termination here? Not if they're bound by the automatic stay. The notion that there is some difference between the effect of the automatic stay and the effect of a separate independent court order is groundless. They have precisely the same effect. In fact, violations of the automatic stay in an individual bankruptcy case are more likely to be punished severely than an ordinary violation of a court order because we have a special provision in Section 362 that allows for the imposition of punitive damages for violation of a provision of the automatic stay. So there's no question that the city is compelled by the automatic stay to return the property. That being the case, there is no basis for claiming that the lien has somehow been avoided. An involuntary, compelled termination of possession of property of a debtor is not something that terminates a possessory lien. Now, the other argument that they make is that a separate exception from the automatic stay, Section 362b-4, having to do with exercise of the police power, would prevent the city from having to turn this property over. Well, there are a number of reasons why that argument is unavailing. The best and most apparent one is that in this whole collection process, the city is not primarily enforcing police power. It's enforcing revenue collection. There are any number of reasons to come to that conclusion. But what I want to say is that the real question here is the balance between police power enforcement on one hand and revenue collection on the other. In Missouri v. United States Bankruptcy Court, an Eighth Circuit case, the court went through that kind of distinction very importantly. And if we look at what's going on in the city's ticketing and towing operations, it's abundantly clear that this is a revenue collection. It turns out that the city collects 9% of its operating budget every year based on its enforcement of these regulations and its ordinances. They count on that. They enacted the ordinance that I was just talking about to minimize the impact of Chapter 13. And they're continuing to do that. So this is revenue collection at its core. And then if we look at the kind of violations that are being enforced here, they are not primarily police power regulations. Parking is generally not something that deals with the public safety. Certainly, the failure to display a city revenue sticker on a car is not the enforcement of public safety. Similarly, even suspension of a driver's license, because it's often for unpaid parking tickets, is not the enforcement of public safety. What the city is doing here, and again, it's essential for the budget. They can't lose 9% of their revenue. It's important for their budget to collect these fines. But it is not primarily public safety. Another thing I can mention is that the driver of the car is not the person who is liable under these ordinances. It's the person who owns the car. So as in our case, where one of the debtors was allowing her son to drive the car, the son racks up parking tickets. The debtor has the car towed. This is not public safety. You may be right, but you may not be. My sense is that your adversary would say all these traffic laws exist in the interest of public safety. They exist as an exercise of municipal police power. And again, your honor, I would say that it's a question of looking at the primary impact of the legislation. I would not deny that there is some aspect of police power. There are automated speeding tickets. There are automated red light violations. But these things, again, are revenue collection in that it isn't even the driver of the car who is made liable. It's the car. The idea is collect the fine against the owner of the car. So that's the main reason why I would say. Do you think this is an attempt to collect a money judgment? Yes, I would say that. That's separate from the question of police power. I understand that. Because even if it were police power, if they're attempting to collect a money judgment. The exception to the exception is the money judgment. Exactly. And is this a money judgment? Absolutely, yes. The city does not go to circuit court to collect these fines from the owners of the vehicles. If the owner of the vehicle does not institute proceedings to have a court look at the question, the city has the right and exercises it repeatedly to sell the car to usually someone who crushes it. Doesn't it seem odd to call an unpaid parking ticket a money judgment? Well, it would. Except that there is a definition of money judgment in the cases construing section 362b-4. And all that is required to have a money judgment is a definition of the person liable, a definition of the amount that's owed, and the ability to collect that amount. That's a judgment. And the city complies with every one of those requirements. They have the owner of the vehicle defined. They have the amount that they're seeking defined. And they have the ability to collect that without going to any court. Now, there was a question raised as to how many times the city impounds and then sells vehicles. That is not part of the record. But I will say, if the court is willing to consider the analysis that was done by the Chicago Public Radio Station and other public interest groups on this subject, a couple of years ago, the total amount of vehicles that were seized by the city is 20,000. And of that amount, 8,000 wound up being crushed by the person to whom the city sold the cars. So this is a very substantial amount of seizure and destruction. And that's consistent with the need for the city to have high volume in their operation. If the city sells the other 8,000 or crushed, what happens to the 12? The 12 would be returned to the debtor on payment of the total amount that's due to the city. So it's either return to the debtor or crushed. That's right. Essentially. Now, theoretically, I suppose the person to whom the car is sold could try to resell it, but that's not what's done. The cars wind up being crushed. So is the scheme you would envision, is that the city has to come to federal court on every Chapter 13 involving one of these automobiles to protect that lien? I don't believe they have to. I believe they can rely on the fact that their lien is still in effect. It was not canceled. And that's pursuant to the common law, the restatement of securities, the Illinois case that I cited. There was no statement in that Illinois decision that Ms. McLaughlin referred to that had anything to do with a need for adequate protection or payment of a lien being a prerequisite for continuation of the lien. The mere fact that surrender of possession took place pursuant to a court order meant that it was not voluntary. And being involuntary, it did not result in termination of the lien. So the city still has its lien. Curiously enough, even if it didn't have a lien, it would still have the unpaid parking tickets, which gives it the right to seize the car in the first place. So the city is not left with no defense. What I was going to say, though, in answer to your question, Judge Flom, is that the city in most cases would probably concede that the debtor gets the car, and the city would look to be paid as a secured creditor through the Chapter 13 case. And they would look for payment the same way all of the creditors in the Chapter 13 case would look to be paid. Your Honors, I believe that covers all of the points that I wanted to make. If there are no other questions, I will terminate my argument here. Thank you. Your Honors, if I may begin with the 362b4 exception. Clearly, the city's vehicle regulations serve a regulatory purpose. The government regulates conduct by establishing penalties for violations. And that public welfare interest includes things like parking regulations. Impoundment is a stepped-up sanction to deter conduct when those penalties have failed, as they have in these cases many, many times. The city does not enforce money judgments when it holds a vehicle. As we've explained in our briefs, in order to enforce a money judgment, we have to go to Circuit Court and register the administrative order. And then we can take further steps to enforce it. And we have looked to see if any of these orders were registered in Circuit Court. In these cases, they have not been. So we have not taken steps to enforce a money judgment. On that point, I direct the Court to an Eastern District of Pennsylvania case called In Regester. It's instructive in that it distinguishes between impounding a vehicle within the B-4 exception and auctioning the vehicle, which would be a way of enforcing the money judgment. I'd also quickly like to go over the Section 542A language, Shell Turnover Property, because my opposing counsel has suggested that this imposes an automatic turnover requirement. It does not. There is a history of Section 542A which demonstrates that Congress's intent in enacting that provision in 1978 was to codify the existing judicial practice, precode practice, and that did not require automatic turnover. The precode practice was that turnover was required only pursuant to a court order when the court had determined what would adequately protect the creditor. So is this a point on which you believe and you just want to reserve the position that Thompson was incorrectly decided? Thompson is absolutely incorrect on this point. But Thompson did address the point, correct? No. Well, hold on. There's a sentence that says 542A turnover is compulsory. It doesn't address the legislative history and it doesn't address the fact that Congress codified precode practice in Section 542A and nothing in precode practice required automatic turnover. Thompson's decision that such automatic turnover was required is completely contrary to what Congress intended in enacting that provision. Whitingpools also does not support Thompson's argument nor Detter's argument here. In Whitingpools, the Supreme Court simply held that a debtor may seek turnover and in fact, Whitingpools demonstrates how turnover works under Section 542A. In that case, there was adequate protection ordered for the creditor. In that case, the IRS, there were pre-turnover payments that were required and other means in which the lien that the IRS had was adequately protected. Nothing in that case suggests that turnover is automatic and that it happens without a court order and adequate protection. So those are just a couple of points in which Thompson goes awry and of course, I'm out of time so unless the court has some further questions. Just one last question, at least for me. I don't know about my colleagues. You mentioned that there's no instance here of going to the circuit court for a collection. No, we have not done that. Is that a policy decision that it's from a cost-benefit analysis it's better to proceed with this impoundment procedure and the cost of maintaining all that whatever that costs the city. I understand there's a revenue component. Then going in and getting these judgments against individuals? Well, before we go into the circuit court it is probably easier for both the city and the person who owes the city debt to resolve it without the court procedure. And so, there are cases in which we go ahead and we take that further step. I'm thinking about the situation where you don't pay your property taxes. What does the city do there? Well, then we would were we entitled to enforce an administrative judgment of this nature? And I can't speak specifically to the property tax situation. But there would be remedies under Illinois law that would provide things like for example, wage garnishment and other types of citations to discover assets. Those are enforcement mechanisms. And those all require registration of the judgment with the circuit court. Now, our position is that if someone's filed bankruptcy we could not take those steps because that would be something that the automatic stay would prevent us from doing. But our position is also that in simply holding the car we don't take those enforcement steps. And therefore, we're not in violation of the stay in holding the car. So, for the reasons that I've summarized we request that the decisions of the bankruptcy court be reversed and that the orders sanctioning the city for violating the automatic stay be vacated. Thank you, Mr. Baldwin. Thank you, Mr. Redoff. Thanks to all counsel. The case is taken under advisement.